**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00338-CHL**

**ROBERT S.,**[1] **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

# MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint filed by Plaintiff, Robert S., ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief. (DNs 16, 17, 23.) In lieu of a reply, Claimant filed a notice of no reply stating that he relied on the arguments set forth in his opening brief. (DN 24.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 8.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

On March 6, 2023, Claimant filed an application for supplemental security income under Title XVI ("SSI"). (R. at 11, 73-74, 81-82, 165-77.) The application alleged disability beginning on February 6, 2023, due to back injury, heart disease, diabetes, and arthritis. (*Id.* at 11, 73-74, 81-82, 213) Claimant's application was denied initially and again on reconsideration. (*Id.* at 91-95, 97-100.)

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

At Claimant's request, Administrative Law Judge ("ALJ") Steven Collins ("the ALJ") conducted a hearing on Claimant's application on March 18, 2024. (*Id.* at 25-59, 101.) Claimant was unrepresented at the hearing but after being advised of his right to be represented and being told he could have more time to retain representation, Claimant elected to move forward with the hearing. (*Id.* at 28, 30-31.) During the hearing, Claimant testified to the following. He has had back pain since 2000, but he used to just work through it. (*Id.* at 41.) Once his back pain starts, he has to lay down to get it to go away. (*Id.* at 42.) It usually starts after he has been on his feet for approximately twenty to thirty minutes. (*Id.* at 42, 44.) After thirty minutes of standing, he has a burning and aching pain in his lower back. (*Id.* at 44.) He generally tries not to be on his feet too long to not trigger the pain. (*Id.* at 43.) His back would also begin to hurt after walking for three or four blocks. (*Id.* at 45.) On an average day, he rates his pain as a seven out of ten. (*Id.* at 48.) He takes medication to manage his pain, but the medication does not eliminate it. (*Id.*) He also lies down or sits down in a chair with a backrest to manage his pain. (*Id.*)

Vocational examiner ("VE") James Adams ("the VE") was also present at the hearing and testified. (*Id.* at 28-29, 54-59.) The VE first classified Claimant's last work. (*Id.* at 55.) Then the VE and the ALJ had the following exchange:

> ALJ: Would you please assume a hypothetical individual of the Claimant's age and education, and with the past jobs you've described. Please further assume that the individual is limited as follows. Hypothetical #1, please assume an individual who can occasionally lift – basically, perform a range of light work, as defined by the regulations. That's occasionally lifting and/or carrying up to 20 pounds, frequently lifting and/or carrying up to 10 pounds. Can sit about six hours in an eight-hour workday, can stand and/or walk about six hours in an eight-hour workday. The individual can occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl. Should never climb ladders, ropes, or scaffolds. There should be no more than occasional overhead reaching with the left upper extremity. The individual should avoid concentrated exposure to vibration, and should avoid concentrated exposure to

dangerous machinery and unprotected heights. Would that hypothetical individual be able to perform either of those past two jobs you identified?

VE: No, Your Honor. This is light. Past work was – one was medium, one was heavy.

ALJ: Would there be any other jobs that individual could perform? And if so, could you provide a few examples with numbers of jobs for each occupation?

VE: Yes. I can give you those jobs. I could suggest for this individual, as you described here, should be able to perform the work – let's see, okay, as a warehouse checker, 222.687-010, 68,000, light, SVP of 2. I could also suggest your individual you described should be able to perform the work of a[n] egg washer, 529.686-030, 48,000, light, SVP of 1. And I could further suggest this individual as described should be able to perform the work of a garment sorter, 222.687-014, 52,000, light, SVP of 2.

(*Id.* at 55-56.) After asking two more hypotheticals and hearing the VE's response, the ALJ asked the VE if the VE's testimony had been consistent with the Dictionary of Occupational Titles ("DOT"). (*Id.* at 56-57.) The VE confirmed that all of his testimony had been consistent except for his response to the ALJ's third hypothetical that addressed absenteeism, which is not covered in the DOT. (*Id.* at 57.) The VE clarified that his response to that hypothetical was based on his own research and knowledge gained from talking with employers, employees, and other VEs. (*Id.*) Neither the ALJ nor Claimant asked the VE to identify the source of the numbers of jobs for the occupations the VE identified as responsive to the ALJ's first hypothetical. (*Id.* at 54-59.)

The ALJ issued an unfavorable decision on June 28, 2024. (*Id.* at 8-24.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant had not engaged in substantial gainful activity since March 6, 2023, the application date. (*Id.* at 13.) Second, Claimant had the following severe impairments: left shoulder osteoarthritis and

degenerative disc disease of the lumbar spine. (*Id.*) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 14.) Fourth, Claimant had the residual functional capacity ("RFC") to perform light work with the following exceptions:

> can lift/carry twenty pounds occasionally and ten pounds frequently, can sit six hours in an eight hour workday, can stand and/or walk six hours in an eight hour workday, can occasionally climb ramps and stairs, no climbing of ladders, ropes, or scaffolding, can occasionally stoop, kneel, crouch, and crawl, can occasionally use the left upper extremity for reaching overhead, and should avoid concentrated exposure to vibration, dangerous machinery, and unprotected heights.

(*Id.* at 15.) Additionally at step four, the ALJ found that Claimant could not perform any of his past relevant work. (*Id.* at 18.) Fifth, the ALJ found that considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.* at 19.) The ALJ concluded that Claimant was not under a disability since March 6, 2023, the date the application was filed. (*Id.* at 20.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on May 16, 2025. (*Id.* at 1-5, 161-64.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2025); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on June 6, 2025. (DN 1.)

## II. DISCUSSION

The Social Security Act authorizes payments of SSI to persons with disabilities. *See* 42 U.S.C. §§ 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2025).

**A. Standard of Review**

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B. Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. § 416.920 (2025). In summary, the evaluation process proceeds as follows:

1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 392 (6th Cir. 1999).

**C. Claimant's Contentions**

Claimant made only one argument: that the ALJ's step five finding was not supported by substantial evidence because it was based on unreliable testimony about the job numbers that went with the occupations the VE identified in response to the ALJ's hypothetical. (DN 16, at PageID # 445-48; DN 17.) At step five, the ALJ has the burden of demonstrating that there

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.909 (2025).

exists a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. § 416.960(c) (2025); *Jordan*, 548 F.3d at 423. The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations. *See, e.g.*, *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Claimant made two sub-arguments regarding why the ALJ's step five finding was unsupported by substantial evidence, and the Court finds them both equally unavailing.

First, Claimant argued that the VE's testimony was speculative because he said that Claimant "should" be able to do certain jobs, not that he could. (DN 16, at PageID # 446.) While the VE did use the word "should" in his testimony, nothing about the remainder of the testimony indicates that he was in any way speculating about whether the jobs he identified in response to the ALJ's hypothetical were jobs that the hypothetical individual could actually perform. The Court agrees with the Commissioner that the VE's use of the word "should" was merely a "linguistic quirk." (DN 23, at PageID # 471.) In particular, Claimant does not argue in his brief that the jobs identified are actually inconsistent with the either the hypothetical posed or the ALJ's RFC determination or that he cannot perform them. Without such support, the Court finds Claimant's argument to be meritless.

Second, Claimant argued that the source of the VE's job numbers was the SkillTRAN Job Browser Pro ("SkillTRAN") database because the VE referenced SkillTRAN on his resume and that if the Court looks at the SkillTRAN data for the jobs identified, the VE's numbers were inaccurate and inflated. (DN 16, at PageID # 446-47; DN 16-1.) The Court finds Claimant's

assumption that the VE's testimony was based on SkillTRAN data to be without merit. Neither the ALJ nor Claimant asked the VE for his source for the job numbers he identified, and thus the record is silent on the true source for those numbers. Claimant provided no authority indicating this silence was a violation of any regulation or applicable law. Instead, he urged the Court to assume that the VE used SkillTRAN because the VE referenced the same on his resume. (DN 16, at PageID # 446.) The "Education" section of the VE's resume includes the following description:

> Several years ago I initiated a one day, self training program by visiting with the office in Raleigh, North Carolina that at the time was in charge of revising and updating the Dictionary of Occupational Titles. It consisted of an all day conversation with Mr. Stanley Rose, Supervisor, North Carolina Occupational Analysis Field Center, and his associates. These gentlemen were extremely helpful, and gave me a great insight into the DOT, and how it was compiled, and in fact why it is still a very functional tool today. This function, as performed by Mr. Rose and his colleagues in state agencies no longer exist, as companies such as SkillTRAN now perform this function based on computerized information available from the various federal and state agencies.

(*Id.* at 285.) But nothing about this description definitively indicates that the VE used SkillTRAN in his testimony in Claimant's case. The Court finds Claimant's argument unavailing and exceedingly speculative and worthy of no further consideration.

As Claimant has presented no valid argument to contest the reliability of either the VE's testimony or the ALJ's reliance on the same, the Court finds the ALJ's step five finding to be supported by substantial evidence.

## III. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **AFFIRMED**. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of Record

September 15, 2026